Good morning. Good morning. May it please the Court, my name is Alexandra Krasovic and I am an admitted student under Peter Afrasiabi and Catherine Davis, representing as pro bono appointed counsel, Mr. Rodriguez. I would like to reserve two minutes for rebuttal if that is acceptable. Sure. Thank you. This Court should reverse because the motion to reopen was not time-barred. At the time of Mr. Rodriguez's final order of deportation, there was no limit for the time for filing a motion to reopen. Nevertheless, the BIA applied an impermissibly retroactive agency regulation. Counsel, how do we get around the language in, I guess it was IRERA, that basically established the time-bar and established the 90-day rule or no later than September 30, 1996? And as I understand the procedural history in this case, your client's decision had come down before then and he had actually more than 90 days in order to file and he missed both those deadlines. Your Honor, you're correct that there is that language. However, that language belongs to the regulation. And at the time that Mr. Rodriguez's motion was considered, IRERA was in effect. And the language of IRERA, section 1229 AC 7CI, was that that 90-day deadline applied prospectively. So the fact that the regulation was applied in a retroactive manner. I guess maybe you're absolutely right, and maybe I didn't articulate my question very well. There's not a retroactivity problem in this case because he still had time to meet the 90-day and the September 30, 1996 deadline by virtue of the timing of the decision that he should have filed. So assuming that the regulation is enforceable, where's the retroactivity problem on the facts of this case? The problem is that at the time that his deportation order was entered, there was no time limit on his ability to file a motion to reopen. You're not listening to the question. It doesn't matter as long as under the Constitution, it's not retroactive as to him. And it's not in the sense that the decision gets made. It's true that on the date that the board entered the decision, the state of the law was there was an unlimited amount of time. But then a regulation goes into effect later that establishes a deadline that he could have met but didn't. So there's not a ex post facto violation here, given the fact that the regulation went into effect later when he still had time to comply. Your Honor, I'm sorry to disagree with you, but I think there is a question of retroactivity, impermissible retroactivity under the ANGRAF. What provision of the Constitution do you rely on? I'm relying on the ANGRAF, Your Honor. That is a retroactivity, is it not? And under Landsgraf, it attaches a new consequence to the prior action that there's no way to address because it's inherently retroactive. Here, it's not retroactive. He could have complied in the future with the law that set a deadline, but he didn't. So how is Landsgraf offended? Where is the constitutional violation? Well, Your Honor, he had no notice that the regulation was changed. It got published in the Federal Register. He gets the same kind of notice that the rest of the world gets. Your Honor, in Chang, this Court noted that for a subsequently enacted deadline, one sentence in an appropriations bill would not be sufficient where the government took no steps to directly notify those individuals who would be affected by the change. Moreover, in Chang, this Court recognized that neither notice nor reliance is necessary or sufficient. So all three of the factors looked at under Landsgraf do come into play. And in this case the ---- He had to be individually notified by immigration that he had to file an appeal now because of the new regulation. Is that your position? I'm not sure that constructive or actual notice would have been sufficient. There's still a problem about ---- So even if he'd known, even if he'd had actual knowledge and still missed the deadline, your constitutional argument would be viable? According to Chang, the change in the deadline after the fact is enough to be impermissibly retroactive. Plus, there's still the question of the first prong of Landgraf where the language of the regulation is ambiguous. So the fact ---- What's ambiguous about it? Well, the language doesn't ---- Okay. In order for ---- Sorry. Your Honor, in order for a regulation to be considered unambiguous and as this Court noted in Canker Millage, the language of the regulation must be so fierce to sustain only one interpretation. And what's the different interpretation that you would read in that language? Well, the language here could be read to apply in one of two ways. The first is that it would be read to apply for all orders entered on its effective date of July 1st, 1996, moving forward, or it could be read to apply to all orders regardless of whether or not they were entered before the effective date. The regulation itself doesn't make any express designation of the time at which the regulation does become effective. It merely states that those, you know, deportations ---- those orders, motions to reopen must be filed by the time such impertinence ---- Okay. If we disagree with your ambiguity argument and find that the language is not ambiguous, do you lose? No, Your Honor. We do not because there's still a problem of an inconsistency with congressional intent, which was expressed in Section 1229AC7CI. And I read that ---- I thought Congress told us that we need to start putting time and number deadlines because we're getting too many of these petitions and they're coming way too late in the game. Yes, Your Honor. Congress did give the Attorney General authority to promulgate regulations regarding motions to reopen and the time limit on those motions. However, it did not give the Attorney General authority to enact or promulgate regulations that would apply retrospectively. And at the time Mr. Rodriguez's motion to reopen was considered by the BIA, IROA was in effect so congressional intent that the 90-day deadline be applied prospectively was clear at that point in time. So the fact that the BIA would circumvent congressional intent by applying its regulation in a retroactive manner creates an inconsistency that poses a problem in this case. What did he want to raise in his motion to reopen? In his motion to reopen he was filing that he was eligible for an adjustment of status. However, there's a question about ineffective assistance of counsel there because there were constitutional deficiencies in this case that the counsel failed to raise at that point in time. Well, I want to just put it in perspective and make sure I understand how this all fits together. He had to show an extreme hardship. The IJ, I believe, said all you had is that you coach baseball and soccer and that doesn't show hardship. He makes a motion to reopen that's untimely, arguably at least. That's what's been held. What did he want to raise in that motion to reopen? What would he have shown that he didn't show? Your Honor, he was eligible to adjust his status based upon the fact that he had become married at that time to a U.S. citizen. That was the primary reason for filing that motion. Okay. Did you want to reserve the balance of your time? Yes, I would. Thank you very much. Thank you very much. May it please the Court, Manning Evans for the Attorney General's matter. Go ahead. Mr. Palmer, to pick up on the point you were making about Congress having said it's time to set some deadlines on motions to reopen, Congress said that in IMAC in 1990 in Section 545D. So the regulation that issued on April 29, 1996 was pursuant to that direction from Congress. So the petitioner had ample notice that a deadline was in the works. And as I understand it, his retroactivity argument is focusing specifically on the deportation order that the Board issued in 1996, about April 15. And apparently the petitioner's theory is that somehow his rights to reopen are locked in on the date that that order issued, April 15, 1996. But as Judge Holman pointed out, once the July 1 regulation came into effect, he was given 90 days, just like everybody else at that point, to file a motion to reopen. And our argument is that the relevant act is not the deportation order, but whenever he might file an actual motion to reopen. And he waited until 1998 to file that motion. And so the act that's really relevant here is that 1998 motion. And there is no retroactive conduct or no retroactive effect with respect to that 1998 act. We also believe that the regulation is explicit with respect to its application to petitioner's case. There would be no need for the regulation to specify that September 30, 1996 would be the earliest deadline, unless the regulation was intended to apply to deportation orders that were issued before July 1, 1996. And that's exactly what we have here. In applying the retroactivity analysis, there are several other considerations. St. Cyr, for example, was very interested in a quid pro quo. Here we have absolutely no affirmative act by the petitioner, such as pleading guilty, that raises any kind of reliance interest. I'd also point out that in Lanscraft, the Supreme Court mentioned that procedural rules are less inclined to have an improved principle of retroactive effect. Again, we're dealing with a procedural rule here, a 90-day limit on filing motions for reentry. Petitioners raised several other issues in this case, ineffective assistance of counsel, complaints about the IJ conduct. I would emphasize that none of that is proctored before the Court here. There was no timely petition for review filed after the Board's 1996 decision. The Board did not reissue that decision. It was not asked to reissue that decision. The Board has never revisited its 1996 decision in this case. So there's really no way for that decision and all of the 1995-96 proceedings to come before the Court today. In addition, the petitioner has never offered any allegation or evidence that Mr. Burrier, the attorney hired to file the motion to reopen in 1998, was actually retained to examine the 1995-96 proceedings. Unless you have some allegation that Mr. Burrier was retained to do that, you cannot accuse him of being ineffective for not having done it. So that is also a reason why the 1998 motion to reopen is not a basis for being able to raise the 1995-96 proceedings. I suppose you're right about all of this. I understand counsel to say that the petitioner is the beneficiary now of an I-130 petition, or at least he's eligible to get one. Is there anything he can do at this stage, or is he just out of luck or what? I'm a little bit confused about exactly what his situation is, Your Honor. His motion to stay refers to a marriage to Guadalupe Vergara, I believe. However, the adjustment application materials that appear both in the record and in the motion to take judicial notice concerns a marriage to one Margarita Suarez. There was mentioned during the 1995 hearing of a marriage to someone named Guadalupe that appears at page 120-121 of the administrative record. So exactly what marriage we're talking about here is not clear to me. In any event, the record shows that the adjustment application filed with respect to Margarita Suarez was denied in 2000, and there's no indication of any attempt to renew that or any other marriage at this time. So if the Court has no other questions, we would ask that the petition for review be denied. Thank you, Mr. Creswick. Thank you. Ms. Creswick, I think you have a couple minutes left.  I'm sorry, Your Honor. Which wife are we talking about here? Okay. There is a little bit of confusion. In the pro per brief, they refer to a Guadalupe Vergara. However, she is not the person to whom Mr. Rodriguez is married. He is married and eligible to adjust his status based on his marriage to Margarita Suarez. But as I understood what Government Counsel just said, the I-130 was approved as to the first woman. Is that correct? Or was filed by the first woman? The I-130 actually refers to Margarita Suarez. Guadalupe Vergara was mentioned in the proceedings before the IJ. However, she was a fiancé, not a wife at that time. And since that time, on December 22nd, I believe, of 1997, he became married to Margarita Suarez. As to additional points, the reason Mr. Rodriguez's case should be treated, is it all right if I? Yeah, yeah, yeah. I'm just trying to understand the facts here. It's confusing. Under Landgraf, the Supreme Court requires that Mr. Rodriguez's case be treated differently. And that's why we're asking that this 90-day deadline be not applied to reach Mr. Rodriguez. As for the language of the regulation. What's your response to Government Counsel's point that the regulation was actually adopted in conformance with Congressional Directive in the 1990 Act? Yes, Your Honor, that was the directive. However, it did not specifically state that a retroactively applicable regulation be applied. And the regulations were not enacted until 1996, shortly before Congress enacted I.R.U.R.A. And after Congress did enact I.R.U.R.A., as I mentioned, Section 12.9A.C.A. But I thought Government Counsel's argument was, Your client can't point to any act to his detriment, reliance on the state of the law on April of 1996 when the decision came down, because it wasn't until 1998 that he actually filed the motion to reopen. According to the language of the statute, it appears that the regulation, I mean, sorry, the regulation, it applies to orders, final orders entered before the effective date, if that's what you're getting at. And I think the question here is No, I'm thinking of the situation in St. Cyr, where at the time that the Gilpie plea was entered, the state of the law was such that it wouldn't be a disabling felony that Congress later declared was a deportable violation. Here, I think your argument has to be that in reliance on his belief that he could have forever to file a motion to reopen, they changed that expectation subsequently with the enactment of this regulation. But the only act he took was to take no act at all, which I'm not sure is an act. Your Honor, that is our position, that he did wait based on that prior state of the law or that prior regime. In fact, in Chamber, this Court mentioned that the reliance factor is a factor, but it's not necessary nor sufficient to determining a regulation to be impermissibly retroactive. All right. I see. If you finish your answer, then I think you're out of time. Okay. Thank you. I would ask that this Court reverse the BIA and remand so that Mr. Rodriguez's motion to reopen can be considered on the merits. Thank you very much. Thank you. The case just argued and submitted. Ms. Krasnick, we want to thank you and the law school for a fine job and for taking the case. Congratulations on a great argument. Mr. Evans, it's nice to see you again, too. Thank you. Stand recessed. All rise for a moment of recess.
judges: Silverman, Tallman, Clifton